# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 19-CV-7201 (ENV) (RER)

———————————————

CAPITAL ONE FINANCIAL CORPORATION,

Plaintiff,

VERSUS

CAPITAL ONE AUTO GROUP 1 INC. (NEW YORK), ET AL.,

Defendant.

———————————

**REPORT & RECOMMENDATION**

March 4, 2022

———————————

**TO THE HONORABLE ERIC N. VITALIANO**
**SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Capital One Financial Services ("Capital One" or "Plaintiff") commenced this action on December 23, 2019, against Capital One Auto Group 1 Inc. (New York), Capital One Auto Group 1 Inc. (New Jersey), Capital One Auto Group 01 Inc., Capital One Auto Group 02 Inc., Capital One Auto 01 Inc., Capital One Auto 02 Inc., and Dimitrios Mestousis ("Mestousis," and, collectively, "Defendants"), alleging trademark infringement, trademark dilution, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; deceptive trade practices and trademark dilution under N.Y. Gen. Bus. Law §§ 349 and 360; and trademark infringement and unfair competition under New York common law. (ECF No. 1 ("Compl.")). Currently before

1

the Court is Plaintiff's motion for default judgment (ECF No. 24 ("Pl.'s Mot.")), which Your Honor has referred to me for a report and recommendation (ECF order dated 4/27/2021).

After carefully reviewing the record and for the reasons set forth herein, I respectfully recommend that the Motion be granted in part. Respectfully, the Court should (1) grant default judgment on Plaintiff's claims of trademark infringement under the Lanham Act and common law; (2) grant default judgment on Plaintiff's claim of cybersquatting under the Lanham Act; (3) dismiss Plaintiff's claims of trademark dilution and unfair competition under the Lanham Act, deceptive trade practices and trademark dilution under the N.Y. Gen. Bus. Law, and unfair competition under New York common law; (4) issue a permanent injunction enjoining Defendants from infringing Plaintiff's marks; and (5) award Plaintiff $40,000 in statutory damages.

## BACKGROUND

### I. Factual Allegations

Capital One is a "diversified financial services company" that offers a wide range of financial products, including banking services, credit cards, loans, and, notably for this action, automotive financing. (Compl. ¶¶ 6–7).[1] Capital One is "one of the largest and best known financial institutions in the United States," being a Fortune 500 company, trading on the New York Stock Exchange, being included in the S&P 100 stock index, sponsoring various prominent sport and music events, and owning the naming rights to Washington D.C.'s major sports and entertainment venue, the Capital One Arena, where several professional sports teams play. (*Id*. ¶¶ 6, 12–13). Capital One has spent billions of dollars promoting its Capital One–branded services and products through various media, including television, radio, internet, mailer ads, and print advertisements. (*Id*. ¶ 11).

---

[1] Capital One's complaint is misnumbered as it begins with enumerated paragraphs one through eleven, but then reverts to paragraph six. (Compl. at pp. 1–3). The references to paragraphs six and above in this section are to the paragraphs that begin on page three of the complaint.

It has received extensive media coverage in well-known publications like CNN, the *New York Times*, the *Washington Post*, *Forbes*, *Businessweek*, and more, and has received numerous corporate awards. (*Id*. ¶¶14–15).

Capital One owns a number of federally registered trademarks in the name "Capital One" as well as the website "CapitalOne.com" and the stylized "Capital One" logo (collectively the "Capital One marks"). (*Id*. ¶ 17; ECF No. 1-9 ("Registration Certificates")). These marks have been in use by Capital One since 1994 and their registrations date back as early as 1996. (Compl. ¶¶ 17–18). Some of the Capital One marks specifically state that they are associated with automobile financing in their federal registration certificates. (*Id*. ¶ 17; Registration Certificates). The Capital One marks and the Capital One brand are widely known and eminent by virtue of the above-mentioned exposure and the popularity of Capital One's financial products and services. (Compl. ¶¶ 16, 19).

Capital One offers automotive financing as one of its services, and provides such services to hundreds of thousands of customers each year. (*Id*. ¶ 8). Using Capital One's "Auto Navigator" service on Capital One's website, CapitalOne.com, customers can find and finance automobiles online. (*Id*. ¶ 9). The service allows customers to search for vehicles within a certain distance of their zip code, and see a list of available automobiles for sale so they can find and finance an automobile through Capital One. (*Id*.). Capital One sometimes obtains title to vehicles; when a customer does not honor the terms of their automotive loan, Capital One will exercise its right to claim the title and then sell the vehicle through an auction house. (*Id*. ¶ 10). These auction houses, such as Manheim, facilitate the sales of thousands of Capital One–owned vehicles annually to dealers and wholesale automotive distributors. (*Id*.). These dealers and distributors can specifically search the auction houses' inventories for vehicles owned by Capital One. (*Id*.).

3

Defendants operate companies and websites that use names confusingly similar to Capital One's to offer wholesale and retail automobile sales. (*Id*. ¶¶ 21–23). Specifically, Capital One Auto Group 1 Inc. filed articles of organization in New York on June 25, 2016; then, with Mestousis acting as Principal, the five New Jersey corporations, Capital One Auto Group 1 Inc. (New Jersey), Capital One Auto Group 01 Inc., Capital One Auto Group 02 Inc., Capital One Auto 01 Inc., and Capital One Auto 02 Inc, were registered to do business between January 31, 2017 and August 27, 2019. (*Id*. ¶¶ 20–21). Beginning as early as 2017, Defendants have "offered automobile wholesale and retail services" under the name Capital One Auto Group. (*Id*. ¶ 22). Defendants purchase their automobile inventory at the same Manheim auctions where genuine Capital One–owned vehicles are sold, and then resell vehicles to individuals and dealers. (*Id*.).

Defendants own and use the website www.capitaloneautogroup.com to promote and sell their used car dealer services in West Babylon, New York. (*Id*. ¶ 23). The website advertises Defendants' used car sales services in New York and New Jersey, and promotes its credit-approval and financing services, saying, "Our finance department has relations with most banks and lending institutions in NY and will help you get a car loan at affordable payments. We provide sub-prime financing too and in most cases your credit history may not be a problem as you might think! At Capital One Auto Group, we believe you can get financed with good, bad or no credit history at all." (*Id*.). Defendants also own the domain names www.caputaloneautogroup.com, which directs to a website that says it is "coming soon," and capitaloneautogroupnj.com, which redirects to the www.capitalonegroup.com website. (*Id*. ¶ 24).

In December 2018, Plaintiff sent Defendants a cease-and-desist letter addressed to Mestousis and Capital One Auto Group 1 Inc., demanding that Defendants immediately stop using the Capital One mark and name. (*Id*. ¶ 25). Defendants did not respond, and Plaintiff's counsel sent a second

4

letter to follow up in January 2019. (*Id*.). Defendants did not respond to the second letter either, and continued to use and register companies containing the Capital One name and mark. (*Id*.).

Plaintiff alleges that Defendants' unauthorized use of the Capital One marks and name through its companies and the www.capitalonegroup.com and capitaloneautogroupnj.com websites is likely to cause confusion, mistake, and deception as to whether the websites are affiliated with Plaintiff; that Defendants' uses are likely to dilute the value and distinctiveness of Plaintiff's famous Capital One mark; and that Defendants have damaged and irreparably injured Plaintiff, the Capital One mark, and all associated goodwill. (*Id*. ¶¶ 26–28). Plaintiff alleges that Defendants' websites cause public confusion, mistake, and deception, and that Defendants knew or should have known that their use of the Capital One name and mark violated Plaintiff's rights in the Capital One marks. (*Id*. ¶¶ 28–29). Plaintiff alleges Defendants acted knowingly, willfully, and in reckless disregard of Plaintiff's rights, and that Defendants acted in bad faith. (*Id*. ¶ 29).

## II. Procedural History

Plaintiff Capital One commenced this action on December 23, 2019. (Compl.). Plaintiff served Capital One Auto Group 1 Inc. (New York) via the New York Secretary of State on March 12, 2020. (ECF No. 8). Plaintiff served Capital One Auto Group 1 Inc. (New Jersey), Capital One Auto Group 01 Inc., Capital One Auto Group 02 Inc., Capital One Auto 01 Inc., and Capital One Auto 02 Inc. via the New Jersey Department of State on April 27, 2020. (ECF Nos. 10–14). As to Mestousis, Plaintiff's process server had difficulty completing personal service on him (ECF No. 17), and after several attempts, Plaintiff moved for alternative service on Mestousis via email and his account on the social network Facebook (ECF No. 20), which the Court granted. (ECF order dated 12/14/2020). Plaintiff then served Mestousis via email and Facebook message on January 15, 2021. (ECF No. 21).

Despite being properly served, no Defendants answered or otherwise responded to the complaint. As such, Plaintiff requested certificates of default against Defendants Capital One Auto Group 1 Inc. (New York), Capital One Auto Group 1 Inc. (New Jersey), Capital One Auto Group 01 Inc., Capital One Auto Group 02 Inc., Capital One Auto 01 Inc., and Capital One Auto 02 Inc. on June 12, 2020 (ECF No 16), and the Clerk of Court entered default against those defendants on November 30, 2020. (ECF No. 19). Then, Plaintiff requested an entry of default against Mestousis on March 12, 2021 (ECF No. 22), which the Clerk of Court entered on March 23, 2021. (ECF No. 23).

Plaintiff now seeks default judgment on its claims of (i) trademark infringement and dilution, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq*.; (ii) deceptive trade practices and trademark dilution under N.Y. Gen. Bus. Law §§ 349 and 360; and (iii) trademark infringement and unfair competition under New York common law. (Pl.'s Mot. at 11). Plaintiff seeks relief in the form of (i) "a permanent injunction enjoining Defendants' continued use of Capital One's famous CAPITAL ONE trademark and name (or any other mark or name that is likely to cause confusion with the CAPITAL ONE trademark or name)," as well as (ii) statutory damages for cybersquatting under 15 U.S.C. § 1117(d). (*Id*. at 2, 19).

## <u>DISCUSSION</u>

### I. Default Judgment

Federal Rule of Civil Procedure 55, which governs here, establishes a two-step process for entering judgment against a party who fails to defend. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). In the first step, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default." Fed. R. Civ. P. 55(a). In the second step, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

For purposes of default judgment, the court must accept a plaintiff's well-pleaded factual allegations as true, as the defendants' default "is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court must then determine whether the well-pleaded factual allegations "establish the defaulting party's liability as a matter of law." *Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14-CV-6298 (FB)(RER), 2016 WL 756567, at *2 (E.D.N.Y. Feb. 26, 2016), *adopted by* 2016 WL 1056609 (Mar. 17, 2016). However, the court need not accept all well-pleaded allegations as to damages; instead, a plaintiff must show that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibit Grp*, 973 F.2d at 158–159; Fed. R. Civ. P. 54(c).

## II.  Liability

Capital One seeks default judgment on eight separate claims, (i) trademark infringement under the Lanham Act ; (ii) trademark infringement under New York common law; (iii) cybersquatting under the Lanham Act; (iv) trademark dilution under the Lanham Act; (v) unfair competition under the Lanham Act; (vi) deceptive trade practices under the N.Y. Gen. Bus. Law; (vii) trademark dilution under the N.Y. Gen. Bus. Law; and (viii) unfair competition under New York common law. (Pl.'s Mot. at 11–12).

### A.  Capital One Has Established Defendants' Liability for Trademark Infringement

To prove trademark infringement under the Lanham Act, a plaintiff must show that (1) "it has a valid mark that is entitled to protection" and that (2) the defendants' "actions are likely to cause confusion with [that] mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir.

2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). The legal standard for trademark infringement under New York common law is "essentially the same" as under the Lanham Act. *Deckers Outdoor Corp. v. Huang*, No. 15-CV-4772 (AMD)(RER), 2017 WL 1842556, at *2 (E.D.N.Y. Apr. 20, 2017), *adopted by* 2017 WL 1854728 (May 5, 2017).

The first prong is satisfied by the valid registration of a trademark. *Tiffany & Co.*, 971 F.3d at 84; 15 U.S.C. § 1115 (stating that a federally registered trademark "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration"). Capital One has shown that it owns the federally registered Capital One marks (Compl. ¶ 17; Registration Certificates), satisfying this prong.

As to the second prong, courts in the Second Circuit look to the eight nonexclusive "*Polaroid factors*":

> (1) the senior mark's strength; (2) the degree of similarity between the marks; (3) the proximity of the services; (4) the likelihood that the senior user will enter the same market as the junior user (i.e., bridge the gap); (5) actual confusion generated by the junior mark; (6) whether defendant adopted the junior mark in good faith; (7) the quality of the defendant's product; and (8) consumer sophistication.

*Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc.*, No. 13-CV-04431 (CBA)(RER), 2014 WL 4628910, at *2 (E.D.N.Y. May 8, 2014) (citing *United Airlines, Inc. v. United Airways, Ltd.*, No. 09-CV-4743 (KAM)(JMA), 2013 WL 1290930, at *6 (E.D.N.Y. March 4, 2013) (citing *Polaroid Corp. v. Polarad Elec Corp.*, 287 F.2d 492, 495) (2d Cir. 1961)), *adopted by* 2014 WL 4628983 (Sept. 15, 2014). No single factor is dispositive, and courts consider the totality of the circumstances in determining whether consumer confusion is likely. *Tiffany & Co.*, 971 F.3d at 84–85.

Capital One has shown that Defendants' actions are likely to cause confusion. First, Capital One has an extremely strong mark. Plaintiff has shown that is one of the largest financial services companies in the United States, that its marks have been in use for decades, and that it is a household name. (Compl. ¶¶ 6, 12–13). Second, the marks are very similar. The addition of the word "auto," numbers, or the geographical descriptor "NJ" is not enough to distinguish the Defendants' uses of the Capital One name, as "[c]ourts tend to find domain names that differ from distinctive marks only by the addition of regional identifiers or generic terms to be confusingly similar." *Bos. Rest. Assocs., Inc. v. Ward, No*. 17-CV-5557 (FB)(RML), 2018 WL 5456669, at *7 (E.D.N.Y. Aug. 1, 2018) (collecting cases), *adopted by* 2018 WL 6332492 (Dec. 3, 2018). Third, as to the proximity of the services, Defendants use some of the *very same* auction houses that Plaintiff uses in its auto-financing and used-car services, showing a high degree of proximity. (Compl. ¶ 22). Fourth, as to the likelihood that the senior user will bridge the gap and enter the same market as the junior user, the gap has already been bridged because Plaintiff was already offering its automobile services in the markets where Defendants started offering their services, using the same auction houses, and targeting the same customers, namely people who want to purchase and finance used cars. (*Id*.). Fifth, Capital One has presented evidence of a high likelihood of consumer confusion (*e.g. id*. ¶¶ 26–28, 32, 34), which is sufficient. *See Microsoft Corp. v. Does 1-2*, No. 20-CV-1217 (LDH)(RER), 2021 WL 4755518, at *6 (E.D.N.Y. May 28, 2021) (citing *Am. Auto. Ass'n, Inc. v. Limage*, No. 15-CV-7386 (NGG)(MDG), 2016 WL 4508337, at *4 (E.D.N.Y. Aug. 26, 2016)), *adopted by* 2021 WL 4260665 (Sept. 20, 2021). As to the sixth factor, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Limage*, 2016 WL 4508337, at *4 (quoting *Sola Franchise Corp. v.*

9

*Solo Salon Studios Inc.*, No. 14-CV-0946 (JS)(AKT), 2015 WL 1299259, at *11 (E.D.N.Y. Mar. 23, 2015)). Capital One has shown that Defendants exploited its reputation by using its marks to promote their business. (Compl. ¶ 46). Further, "[b]ad faith may be inferred where a junior user had actual or constructive knowledge of the senior user's mark[,]" *Bos. Rest. Assocs., Inc.*, 2018 WL 5456669, at *5, and Capital One has established that Defendants knew or should have known that their use of the Capital One name and mark violated Plaintiff's rights in the Capital One marks. (Compl. ¶ 29). The seventh factor "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995). There is not much evidence in the record about the quality of Defendants' services due to the lack of discovery; however, Capital One has shown that it would be damaged if the public were to believe "that Capital One is responsible for the quality and performance of Defendants' services or is otherwise affiliated, connected or associated with Defendants, their services, and/or their commercial activities[.]" (Compl. ¶ 46). Eighth, Capital One and Defendants both operate services that allow customers to shop for and finance used cars online. (Compl. ¶¶ 9, 23). They also use the same auction houses. (*Id*. ¶ 22). As such, Capital One has shown that they and Defendants "compete for the same consumers," weighing in favor of a finding of confusion. *27-24 Tavern Corp. v. Dutch Kills Centraal*, No. 14-CV-1625 (FB)(RER), 2015 WL 5772158, at *14 (E.D.N.Y. Sept. 29, 2015).

Together, these factors clearly weigh in favor of a finding that Defendants' use of the Capital One name and marks is likely to cause confusion among consumers. As such, I respectfully recommend that the Court grant default judgment on Plaintiff's trademark infringement claims under the Lanham Act and common law. *See Fed. Exp. Corp.*, 2014 WL 4628910, at *2 (finding

trademark infringement when a delivery company used the name JetEx and similar slogans and logos as the existing delivery company FedEx).

**B.  Capital One Has Established Defendants' Liability for Cybersquatting**

Plaintiff alleges that Defendants' conduct constitutes cybersquatting under the Lanham Act. 15 U.S.C. § 1125(d). To successfully assert a claim under § 1125(d), also known as the Anticybersquatting Consumer Protection Act ("ACPA"), "a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011) (citing 15 U.S.C. § 1125(d)(1)(a)). As discussed below, Capital One has done so here.

    **i.**    **Distinctiveness**

An incontestable federally registered copyright entitles a plaintiff to a presumption that its mark is "inherently distinctive." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497 (2d Cir. 2000). Here, Plaintiff has provided sufficient facts to prove its argument that the Capital One marks were distinctive at the time Defendants registered their domain names. (Pl.'s Mem. at 6, 14). *See Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *8 (E.D.N.Y. Mar. 1, 2018), *adopted by* 2018 WL 1525698 (Mar. 28, 2018).

    **ii.**    **Confusingly Similar**

As discussed above, Defendants' domain names, www.capitaloneautogroup.com and www.capitaloneautogroupnj.com, are confusingly similar to the Capital One marks. The minor

11

changes, including "names of places . . . are similar to the types of common words that other courts have held do not distinguish a domain name from a mark." *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 41 (E.D.N.Y. 2013), *aff'd sub nom. Yung v. Trump*, 648 F. App'x 24 (2d Cir. 2016); *see also Northwell Health*, 2018 WL 1525803, at *8 (finding that "northwellstaffing.com" was a confusingly similar infringement on the plaintiff's "Northwell Health" trademark).

### iii.    Bad Faith

"Bad faith intent to profit" is a term of art under § 1125(d), which provides a list of nine nonexclusive factors[2] for courts to use in determining bad faith. *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 558 (E.D.N.Y. 2019). However, courts must determine bad faith from the unique facts of each case. *Sporty's Farm*, 202 F.3d at 499.

---

[2] "In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)."

15 U.S.C.A. § 1125(d)(1)(B)(i).

Here, Plaintiff asserts that bad faith intent to profit is established because "Defendants intended to divert customers from Capital One's website with the registration and use of these domain names for commercial gain and to harm the goodwill associated with the CAPITAL ONE mark." (Pl.'s Mem. at 14). I agree. Factors V, VII, VIII, and IX are particularly relevant here as Defendants used the extremely well known Capital One marks as part of their business to provide used car sales and financing services in the very same market where Capital One had already been proving used car sales and financing services. This conduct shows an "intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark . . . for commercial gain . . . by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.]" 15 U.S.C.A. § 1125(d)(1)(B)(i)(V). Further, Defendants registered several different companies and at least two domain names that included the Capital One marks, at a time when Capital One was already extremely well known, showing a pattern of conduct as described in factors VII and VIII. The distinctiveness and popularity of the Capital One marks weigh heavily in favor of a finding of bad faith under factor IX, as Capital One is a major financial institution that has been heavily marketed and advertised for decades, becoming a household name. (Compl. ¶¶ 11–15). *See Northwell Health*, 2018 WL 1525803, at *8 (finding bad faith when several of the factors weighed in favor of such a finding).

Accordingly, I respectfully recommend that the Court grant default judgment on Plaintiff's cybersquatting claim under the Lanham Act 15 U.S.C. § 1125(d). *See id*., at *9.

## C.  Remaining Claims

Capital One brings additional claims of trademark dilution and unfair competition under the Lanham Act; deceptive trade practices and trademark dilution under the N.Y. Gen. Bus. Law; and

unfair competition under New York common law. (Pl.'s Mot. at 11–12). As the Court has found that Capital One is entitled to default judgment on some of its claims, and the scope of the appropriate injunctive or monetary relief would not change based on the merits of the remaining claims, the Court need not reach a decision on those claims. *Microsoft Corp.*, 2021 WL 4755518, at *8 (collecting cases). Accordingly, I respectfully recommend dismissing Capital One's remaining claims.

## III. Damages

### A. Permanent Injunction

Plaintiff seeks a permanent injunction enjoining Defendants' continued use of the CAPITAL ONE trademark and name or any other mark or name that is likely to cause confusion. (Pl.'s Mot. at 2).

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 157 (E.D.N.Y. 2013) (citations omitted). The Lanham Act authorizes permanent injunctions if a plaintiff demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Stark Carpet*, 954 F. Supp. 2d at 157.

Plaintiff has demonstrated its need for a permanent injunction. First, "[i]n trademark infringement cases under the Lanham Act, a party may show irreparable injury by demonstrating

14

a likelihood of confusion." *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *8 (E.D.N.Y. Oct. 1, 2019) (collecting cases), *adopted by* 2019 WL 6726152 (Dec. 11, 2019); *see also Deckers Outdoor Corp.*, WL 1842556, at *6 ("where the court finds a likelihood of consumer confusion, irreparable injury is established"). Capital One has shown that Defendants' actions are likely to cause public confusion, mistake, and deception (Compl. ¶¶ 26–28), satisfying this prong. *See Fed. Exp. Corp.*, 2014 WL 4628910, at *4 (finding irreparable harm when "the record establishes that, without a permanent injunction, Defendants will continue to infringe the FedEx marks, and that such conduct is likely to mislead the public and damage the FedEx brand").

Second, "[i]n the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate a plaintiff for her injuries." *Northwell Health*, 2018 WL 1525803, at *10 (quoting *Eu Yan Sang Int'l Ltd. v. S & M Enterprises (U.S.A.) Enter. Corp.,* No. 09-CV-4235, 2010 WL 3824129, at *4 (E.D.N.Y. Sept. 8, 2010), *adopted sub nom. Eu Yan Sang, Int'l LTD. v. S & M Enterprises (U.S.A) Enterprises Corp.*, No. 09-CV-4235, 2010 WL 3806136 (Sept. 23, 2010). Here, Capital One has no assurance from Defendants that they will stop using the Capital One marks, as Defendants have not responded to this lawsuit. Further, Defendants have ignored Capital One's cease-and-desist letter and follow up letter. (Compl. ¶ 25). As such, this prong is satisfied. *Fed. Exp. Corp.*, 2014 WL 4628910, at *4 (finding remedies at law inadequate when "Defendants ignored [Plaintiff]'s demands to cease and desist from their illegal conduct and failed to defend against this lawsuit.").

Third, the remedy is warranted on balance because Defendants' continued use of the Capital One marks is an ongoing threat to Plaintiff's reputation and brand. *Deckers Outdoor Corp.*, WL 1842556, at *6 (finding this prong satisfied when the plaintiff "faces the threat of continuous loss of goodwill and harm to his business reputation absent the issuance of a permanent injunction").

Finally, an injunction would serve the public interest by eliminating confusion for consumers. "Anti-infringement injunctions serve the public interest by preventing consumer confusion and allowing a more efficient marketplace to operate by virtue of the availability to consumers of a clear identification of products, services and vendors." *Stark Carpet*, 954 F. Supp. 2d at 164; *see also Fed. Exp. Corp.*, 2014 WL 4628910, at *5; *Deckers Outdoor Corp.*, WL 1842556, at *6. Plaintiff has shown that Defendants' use of the Capital One marks is likely to cause consumer confusion, and enjoining Defendants from using those marks will allow consumers to more clearly identify the origin of each party's services.

As Capital One has established its entitlement to an injunction under the Lanham Act and relevant case law, I respectfully recommend that the Court enter the following Order, as proposed by Capital One:

Defendants, their predecessors, successors, related companies, officers, directors, employees, agents, and all persons in active concert or participation with any of them who receive actual notice of this Judgment by personal service or otherwise are hereby permanently from:

1. Using, registering, seeking to register, or causing to be used or registered in the future any trademark, name, logo, trade name, business name, brand, designation, and/or other identifier comprised of or containing the CAPITAL ONE mark (including CAPITAL ONE AUTO GROUP) or any other confusingly similar or dilutive name, mark, logo, trade name, company name, source identifier, or designation in any form (e.g., as, or as part of, a trademark, logo, trade name, business name, domain name, fictitious name, tag, label, packaging, product design, product description, app name, keyword, favicon, and/or social media name), in any medium (e.g., print, television, Internet, or other electronic or online means), in connection with any products or services, or in any other manner likely to injure Capital One, its mark, and/or its reputation;

2. Representing, by any means whatsoever, directly or indirectly, that Defendants, their services, and/or their activities originate from, are sponsored by, or are associated, affiliated, or connected with Capital One in any way; and

16

3. Assisting, aiding, abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (2) above.

(ECF No. 24-5 ("Proposed Judgment"), ¶ E.).[3]

## B. Statutory Damages

Plaintiff seeks maximum statutory damages of $100,000 per domain name under 15 U.S.C. § 1125(d) (the ACPA), totaling $200,000. (Pl.'s Mot at 19–20). "The ACPA provides, in lieu of actual damages and lost profits, for the award of statutory damages of a 'just' amount, ranging from $1,000 to $100,000 per violation." *Next Realty, LLC v. Next Real Est. Partners LLC*, No. 16-CV-6327 (JS)(GRB), 2019 WL 1757781, at *4 (E.D.N.Y. Mar. 11, 2019) (quoting 15 U.S.C. § 1117(d)), *adopted by* 2019 WL 1758447 (Mar. 26, 2019). "The Court has considerable discretion in determining an appropriate award of statutory damages and . . . the Lanham Act provides little guidance on how to proceed in any given case." *Study Logic, LLC v. Clear Net Plus, Inc.*, No. 11-CV-4343 (CLP), 2012 WL 4329349, at *14 (E.D.N.Y. Sept. 21, 2012) (quoting *Mamiya Am. Corp. v. HuaYi Bros., Inc.*, No. 09-CV-5501 (ENV)(JO), 2011 WL 1322383, at *7 (E.D.N.Y. Mar. 11, 2011), *adopted by* 2011 WL 1253748 (Mar. 31, 2011)). Accordingly, courts have taken guidance from the Copyright Act, under which courts look to factors including:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id*. (quoting *Martal Cosmetics, Ltd. v. Int'l Beauty Exch. Inc.*, 01-CV-7595 (TLM), 2011 WL 3687633, at *23 (E.D.N.Y. Aug.23, 2011) (internal citations and quotations omitted)). The

---

[3] Capital One also seeks an order directing Defendants to transfer to Capital One its existing domain names and for the "domain name registrars" for those domains to "assist in changing the registrar of record for these domains to a holding account with a registrar of Capital One's choosing." (Proposed Judgment, ¶¶ C, D). Capital One does not, however, discuss the necessity for or propriety of such relief in its motion papers. Absent such a discussion, this relief should be denied.

statutory minimum is "presumptively sufficient for purposes of deterrence and compensation where there is no reason to believe the violation was willful or that it resulted in any harm." *Id.* (quoting *Mamiya Am. Corp.*, 2011 WL 1322383, at *8).

Where, as here, there is evidence of willfulness, the "specific provision governing damages for a cybersquatting claim includes no specific guidance[.]" *Mamiya Am. Corp.*, 2011 WL 1322383, at *8. However, it is common for courts in this circuit to multiply the statutory minimum by at least a factor of ten where infringement is willful. *Id.*; *see also Study Logic, LLC*, 2012 WL 4329349, at *15.

Plaintiff seeks the maximum statutory damages available, $200,000, and cites *Richemont Int'l S.A. v. Montesol OU*, No. 11-Civ.-9322 (JGK)(HBP), 2014 WL 3732887 (S.D.N.Y. May 13, 2014), *adopted as modified by* 2014 WL 3732919 (July 29, 2014) and *Tiffany (NJ) LLC v. QI Andrew*, No. 10-Civ.-9471 (KPF)(HBP), 2015 WL 3701602 (S.D.N.Y. June 15, 2015) in support. (Pl.'s Mot. at 20). However, both of those cases involve the large-scale sale of counterfeit luxury-branded products over websites bearing infringing domain names—infringements which are very different in scope and type than the one at issue here. Therefore, it would not be appropriate to award Plaintiff maximum statutory damages.

In light of the Defendants' willful infringement, and because the Copyright Act factors above weigh in favor of increased damages beyond the statutory minimum, I respectfully recommend an award of $40,000 in statutory damages, which is in line with other decisions in this district in factually similar cases. *See Next Realty, LLC*, 2019 WL 1757781, at *4 (awarding $10,000 for each offending domain name when defendants willfully violated the ACPA under circumstances somewhat similar to those at issue here); *Mamiya Am. Corp.*, 2011 WL 1322383, at *8 (awarding a total of $25,000 in damages when "willfulness makes a ten-fold increase in the minimum award

reasonable; [and] a further doubling based on the fact that the violation involved two marks is also appropriate"); *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17-Civ.-1927 (PAE)(GWG), 2020 WL 3564485, at *13 (S.D.N.Y. July 1, 2020), *adopted sub nom. Experience Hendrix, LLC v. Hendrix*, 2020 WL 4261818 (July 24, 2020) (rejecting a request for maximum statutory damages for three domain names as not appropriate under the circumstances, and finding that "$10,000 in statutory damages for each domain name is appropriate to meet the purposes of the statute" when defendants violated the ACPA); *J. Taikwok Yung v. Trump*, No. 11- CV -1413 (DLI)(VVP), 2014 WL 819417, at *6 (E.D.N.Y. Feb. 28, 2014), *adopted by* 2014 WL 1257761 (Mar. 26, 2014), *aff'd sub nom. Yung*, 648 F. App'x 24 (rejecting a request for maximum statutory damages under the ACPA and instead granting an award of $8,000 per infringing domain name for four domain names, for a total judgment of $32,000).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion be granted to the extent set forth in this Report and Recommendation and that the Court (1) grant default judgment on Plaintiff's claims of trademark infringement under the Lanham Act and common law; (2) grant default judgment on Plaintiff's claim of cybersquatting under the Lanham Act; (3) dismiss Plaintiff's remaining claims; (4) issue a permanent injunction; and (5) award Plaintiff $40,000 in statutory damages.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.

1989).

**RESPECTFULLY SUBMITTED**

_____

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 4, 2022
          Brooklyn, NY